# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | Bankruptcy Case No. 24-22201-GLT |
| | : | |
| JAISON KELLY, | : | Chapter 13 |
| | : | |
| Debtor. | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, OFFICE OF THE ATTORNEY GENERAL, | : : : : | |
| | : | Related to Document No. 48 |
| Movant, | : | Document No. |
| | : | |
| v. | : | |
| | : | |
| JAISON KELLY, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**OBJECTION OF THE COMMONWEALTH OF PENNSYLVANIA, OFFICE OF THE ATTORNEY GENERAL, TO DEBTOR'S AMENDED CHAPTER 13 PLAN DATED OCTOBER 3, 2024**

The Commonwealth of Pennsylvania, Office of the Attorney General, by and through its undersigned counsel, does hereby object as a party in interest to Debtor's Amended Chapter 13 Plan ("proposed Plan") dated October 3, 2024, as follows:

## Parties

1. Movant is the Commonwealth of Pennsylvania, Office of Attorney General (hereafter "Movant" or "Commonwealth"). Movant is a governmental unit with offices at 1251 Waterfront Place, Mezzanine Level, Pittsburgh, Pennsylvania 15222 and 15th Floor Strawberry Square, Harrisburg, Pennsylvania 17120.

2. Respondent is the Debtor in the above-captioned bankruptcy case, Jaison Kelly (hereafter "Debtor"). Debtor is an adult individual residing at 113 Overlook Drive, Pittsburgh, Pennsylvania 15237.

## Jurisdiction and Venue

3. This court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1334(b). This is a core proceeding pursuant to 28 U.S.C. §§ 151, 157(b)(2)(L).

4. Venue is proper pursuant to 28 U.S.C. §1409(a).

## Background

5. On July 21, 2022, the Commonwealth commenced a public enforcement action against Debtor and his dealership business, JK Motor Cars, in the Court of Common Pleas of Allegheny County, Pennsylvania, at Civil Docket No. GD-22-009111 (the "State Court Action").

6. The State Court Action alleges that Debtor and JK Motors have violated the Pennsylvania *Unfair Trade Practices and Consumer Protection Law*, 73 P.S. § 201-1, *et seq.* (herein referred to as the "Consumer Protection Law"), while engaging in trade and commerce within the Commonwealth of Pennsylvania by advertising, marketing, offering for sale, and selling used motor vehicles to consumers.

7. On February 21, 2023, the Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code at Bankruptcy Case No. 23-20371-GLT (the "2023 Bankruptcy Case").

8. In the 2023 Bankruptcy Case, over two dozen consumers filed proofs of claim against the Debtor in connection with the alleged violations of the Consumer Protection Law. In addition to those consumers' individual proofs of claim, on August 21, 2023, the Commonwealth filed a government proof of claim against Debtor at Claim No. 60-1 for a total amount of $163,631.25, consisting of $72,631.25 in (non-duplicative restitution) and $91,000.00 in civil penalties under the Consumer Protection Law. In the proof of claim, the Commonwealth further stated a portion of the claims constitute a priority claim in the total amount of $14,400.00.

9. In the 2023 Bankruptcy Case, the Debtor filed a plan proposing to pay general unsecured creditors $60,000 over the life of the plan. *See* Bankruptcy Case No. 23-20371-GLT, Amended Plan Dated April 4, 2023, Doc. No. 37.

10. The 2023 Bankruptcy Case was dismissed on May 29, 2024.

11. Debtor refiled under chapter 13 of the Bankruptcy Code on September 4, 2024, at Bankruptcy Case No. 24-22201-GLT (the "present Bankruptcy Case").

12. The general claims bar date in the present Bankruptcy Case is November 13, 2024. The government bar date is March 3, 2025.

13. Debtor's current chapter 13 plan proposes to pay $20,000 to general unsecured creditors over the life of the plan, or an estimated 10% of general unsecured claims.

14. In addition to the claims filed by consumers, Movant anticipates filing a proof of claim for restitution, civil penalties, costs, and other appropriate equitable relief to redress the harm inflicted upon the Commonwealth's citizenry through Debtor's alleged violations of the Consumer Protection Law.

## Objection to Confirmation

15. The Commonwealth has standing to bring the Objection herein under the concept of *parens patriae* which "gives a state standing to sue when the state seeks to protect a quasi-sovereign interest." *See In re Edmond*, 934 F.2d 1304, 1310 (4th Cir. 1991); *In re Burns*, 2008 WL 2782659, *1 (Bankr. M.D. Pa. 2008).

16. The Commonwealth also has a separate basis for standing as a creditor in this case.

## Objection for Failure to Propose a Plan in Good Faith

17. Section 1325(a)(3) of the Bankruptcy Code states that a court shall confirm a plan if the plan has been proposed in good faith and not by any means forbidden by law.

18. In the Third Circuit, bankruptcy courts apply the following factors in deciding whether a debtor's plan was filed in good faith: (1) the nature of the debt; (2) the timing of petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and, (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. *In re McKinney*, 507 B.R. 534, 552 (Bankr. W.D. Pa. 2014) (citing *In re Myers,* 334 B.R. 136, 142 (E.D.Pa.2005).

19.  A review of the above-listed factors all support a determination by the Court that the Debtor's proposed chapter 13 plan was not filed in good faith, and therefore should not be confirmed.

20.  Hundreds of thousands of dollars of claims against the Debtor were filed in the 2023 Bankruptcy Case as the result of Debtor's (i) alleged sale of non-roadworthy vehicles under false pretenses and (ii) alleged fraudulent sale of vehicles even though Debtor was not able to transfer title to the purchasers.

21.  It appears from the Debtor's proposed plan and filed schedules that he is attempting to dispute these claims and avoid or delay payment to the Commonwealth and consumer creditors.

22.  The Debtor's actions in the present Bankruptcy Case, the 2023 Bankruptcy Case, and prior to filing for bankruptcy protection have negatively affected creditors through his continued delay of process. By virtue of filing the Bankruptcy Cases, consumer creditors have been dragged along by Debtor for at least eighteen months with potentially no progress gained.

23.  Upon information and belief and based on Debtor's action in the 2023 Bankruptcy Case, Debtor has sought bankruptcy protection while appearing to incur unnecessary expenses for vehicle payments, vacations, multiple business ventures, etc., as well as continuing to live a luxury lifestyle in a home worth at least $580,000.

24.  In both the 2023 Bankruptcy Case and the present Bankruptcy Case, Debtor has failed to be forthcoming with the Court and creditors. Debtor's schedules appear to fail to disclose vehicles and bank accounts, and Debtor continues to fail to disclose the value of other assets such as exotic pets and vehicle-related equipment, as well as his involvement with the River Monsters Hockey Team and any income related thereto. Debtor's 100% ownership in all four of his *scheduled* businesses is valued at $0.00, despite the businesses' and Debtor's possession/ownership of the aforementioned assets.

25.  Debtor was well aware of the claims from consumers and the pending State Court Action prior to filing his bankruptcy cases.

26.  Debtor has the option to categorize consumer claims as a separate general unsecured class pursuant to 11 U.S.C. § 1322(b)(1), but has failed to do so.

27. Movant objects to the Plan for failure to comply with the good faith requirement pursuant to 11 U.S.C. § 1325(a)(3).

**Objection for Failure to Contribute All Projected Disposable Income to Plan Payments**

28. Section 1325(b) provides, in relevant part:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> . . .
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

29. While "projected disposable income" is not defined by the Bankruptcy Code, the Debtor's Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Official Form 22C, hereinafter "Form B22C") "is presumed to be an accurate reflection of a debtor's projected disposable income for purposes of 11 U.S.C. § 1325(b)(1)." *In re McKinney*, 507 B.R. 534, 543 (Bankr. W.D. Pa. 2014) (citing *In re May,* 381 B.R. 498, 509 (Bankr.W.D.Pa.2008)).

30. As further noted by the court in *McKinney*; "[t]o determine whether the debtor is committing his projected disposable income to pay his unsecured creditors, the Court may utilize the Debtor's Form B22C calculation and multiply it by the number of remaining months in the proposed plan to determine the Debtor's projected disposable income. *In re McKinney*, 507 B.R. 534, 551 (Bankr. W.D. Pa. 2014) (citations omitted).

31. Debtor's Statement of Current Monthly Income calculates that Debtor's monthly disposable income is $11,152.00. This means that to comply with the disposable income test of § 1325(b)(1)(B), the Debtor would be required to pay at least $669,120.00 to general unsecured creditors over the life of the plan, to the extent such claims exist.

32. Debtor's current plan proposes to pay a total of $5,243.00 per month, and only $20,000 to general unsecured creditors over the life of the plan, estimated to be approximately 10% of total general unsecured claims filed.

33. Debtor claims to have an increase in income compared to the 2023 Bankruptcy Case. *See Motion to Extend the Automatic Stay*, Doc. No. 11. However, his current plan proposes to pay $40,000 less to general unsecured creditors than the plan proposed in the 2023 Bankruptcy Case.

34. Based on the Debtor's current schedules, the unsecured creditors are grossly underpaid, and therefore the Debtor's Plan cannot be confirmed.

**Objection for Failure to Properly Calculate Disposable Income**

35. In his Statement of Current Monthly Income, Debtor lists "ordinary and necessary operating expenses" for his various businesses as $18,854.00 per month. *See* Official Form 122C-1 at Doc. No. 29, Pg. 51.

36. It is believed that these expenses include unnecessary luxury expenses such as lease payments for a 2023 Tesla, lease payments for a new 2024 Nissan Z sports car, and, based on Debtor's past conduct in his 2023 Bankruptcy Case, personal expenses unrelated to the businesses such as vacations and other travel, and more.

37. Luxury expenses are deemed to be disposable income. *In re MacDonald*, 222 B.R. 69, 75 (Bankr. E.D. Pa. 1998) ("[T]he primary intent of the definition of disposable income is to prevent large expenditures by chapter 13 debtors on luxury goods and services which cause holders of unsecured claims to receive reduced payments.") (citing 8 COLLIER ON BANKRUPTCY, §1325.08[4][b], at 1325–52 (15th ed. rev.1998)

38. Further, such expenses are not justified and cannot constitute "ordinary and necessary operating expenses" of a business.

39. These expenses should not be considered allowed expenses for the purpose of calculating current monthly income, but rather, should be deemed available as disposable income for distribution to general unsecured creditors.

40. In addition, it is believed the Debtor has unreported income from unauthorized sales of luxury assets through Facebook Marketplace. For example, the Debtor listed for sale wheels from a Nissan Z for $1,900.00 on April 2024 (during the pendency of the 2023 Bankruptcy Case), and continues to list a 2015 Artic Cat ATV.

### Objection for Failure to Provide for Priority Claims

41. Section 1322(a)(2) of the Bankruptcy Code requires that the plan provide for the full payment, in deferred cash payments, of all claims entitled to priority treatment under section 507, unless the holder of a particular claim agrees to different treatment.

42. Section 507(a)(7) of the Bankruptcy Code affords priority status to the allowed unsecured claims of individuals, to the extent of $3,350 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property for the personal, family, or household use of such individuals, that were not delivered or provided.

43. The consumers in this case holding claims for non-refunded deposits paid to the Debtor for the purchase of motor vehicles are entitled to priority claims, up to $3,350 per individual.

44. It is anticipated that the Commonwealth's claim and certain individual consumer claims will be entitled to priority status to the extent it seeks refunds of consumer deposits or the payment of other priority amounts owed to consumers under section 507 of the Bankruptcy Code.

45. The proposed Plan does not propose to pay the priority claims of consumers, nor does the Plan provide for any distributions to the Commonwealth on behalf of its pending priority claim.

46. Movant objects to the proposed Plan for failure to provide for the full payment of priority consumer claims, making the Plan not confirmable pursuant to 11 U.S.C. § 1322(a)(2).

### **Relief Requested**

47. For the foregoing reasons, the Amended Plan dated October 3, 2024 does not comply with the applicable provisions of the Bankruptcy Code and cannot be confirmed under 11 U.S.C. §§ 1325(a)(1), (a)(3), and (b)(1).

48. Movant opposes confirmation of the proposed Plan, and requests that confirmation of the same be denied.

49. Movant requests the Debtor file a second amended plan providing for full payment of all priority consumer claims and the priority portion of the Commonwealth's pending claim.

50. Movant also requests that the second amended plan provide for payment in full of the general unsecured claims of consumer creditors.

51. Movant requests that the confirmation hearing and/or conciliation be continued until after the government claims bar date to determine if the plan is feasible after all claims have been filed.

WHEREFORE, the Commonwealth of Pennsylvania, Office of the Attorney General, respectfully requests this Honorable Court Deny Confirmation of Debtor's Amended Plan dated October 3, 2024 and enter the Proposed Order accompanying this Objection.

DATE: October 17, 2024

Respectfully submitted,

MICHELLE A. HENRY
ATTORNEY GENERAL

COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222
Tel: (412) 235-9072
Fax: (717) 772-4526
E-mail: lmichaels@attorneygeneral.gov

BY: */s/ Lauren A. Michaels*
LAUREN A. MICHAELS
Deputy Attorney General
PA Attorney No. 320686

MELISSA L. VAN ECK
Chief Deputy Attorney General
Financial Enforcement Section